**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MDS, INC.,<br>    Plaintiff,<br><br>v.<br><br>TODD BLANCHE, in his official<br>capacity as Acting Attorney General of the<br>United States; UNITED STATES<br>DEPARTMENT OF JUSTICE;<br>TERRANCE C. COLE, in his official<br>capacity as Administrator of the Drug<br>Enforcement Administration; and the<br>DRUG ENFORCEMENT<br>ADMINISTRATION,<br><br>    Defendants. | Civil Action No. _____ |

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

---

COMES NOW Plaintiff MDS, Inc. ("MDS" or "Plaintiff"), by and through undersigned counsel, and files this Complaint for Declaratory Judgment and Other Relief against Defendants Todd Blanche, in his official capacity as Acting Attorney General of the United States; the United States Department of Justice; Terrance C. Cole, in his official capacity as Administrator of the Drug Enforcement Administration; and the Drug Enforcement Administration (collectively, the "DEA" or "Defendants"). In support, MDS alleges as follows.

**INTRODUCTION**

At its core, this case is about basic notions of fundamental fairness and due process. Over eight months ago, MDS, Inc., a privately-owned retail pharmacy located in Dalton, Georgia, was served by the U.S. Drug Enforcement Administration (DEA) with an Immediate Suspension Order (ISO), thereby immediately suspending its ability to dispense controlled substances before being given a hearing or any other opportunity to be heard. The ISO contained allegations that MDS'

1

pharmacists ignored certain "red flags" before dispensing controlled substances. MDS immediately filed a timely challenge through the administrative appeal process.

In May 2026, nearly eight months after the ISO took effect, MDS was finally given the right to a hearing before a DEA Administrative Law Judge (ALJ), or so it appeared. On the first day of that hearing, the DEA proffered as an expert witness Dr. Carl Gainor. After voir dire, MDS moved to exclude Dr. Gainor on the ground that he was not qualified to testify as to the subject matter for which he was offered: the standard for Georgia pharmacists. After careful consideration and with a thorough and detailed analysis outlined in the transcript, the ALJ granted MDS' motion to exclude Dr. Gainor, finding that Dr. Gainor was not properly qualified by either knowledge, skill, experience, training, or education, to testify on the proffered topic. The DEA's counsel acknowledged, on the record, that the DEA could not proceed with its case without Dr. Gainor and requested the right to file an interlocutory appeal to the DEA Administrator. The DEA's request was granted over MDS' objection.

On June 28, 2026, the DEA Administrator—the same individual who signed the ISO and with almost no substantive analysis whatsoever—overturned the ALJ's ruling and held that Dr. Gainor did, in fact, meet the qualifications of an expert witness. Then, a few days later, on July 1, 2026, MDS was notified that the ALJ who excluded Dr. Gainor was no longer assigned to the Office of Administrative Law Judges and that the matter was reassigned to another ALJ to continue the hearing.

The result for MDS has been a nearly complete and ongoing deprivation of due process, resulting in significant and continuing financial, reputational, and other harm to MDS. MDS had no choice but to file this lawsuit to seek judicial intervention.

2

**NATURE OF THE ACTION**

1.      This action challenges the constitutionality of the administrative-enforcement and adjudicatory process by which the DEA seeks to strip MDS – a retail pharmacy located in Dalton, Georgia – of its DEA Certificate of Registration.

2.      Since October 27, 2025, MDS has been under an Immediate Suspension Order (ISO) that has barred MDS from dispensing controlled substances. It was not until nearly eight months later, on June 15, 2026, that MDS was given the opportunity to be heard by an Administrative Law Judge (ALJ).

3.      On the first day of that proceeding, the ALJ granted MDS' motion to exclude the DEA's subject matter expert, Dr. Carl Gainor, on the grounds that Dr. Gainor was not qualified by knowledge, skill, experience, or education to opine on the practices of a Georgia pharmacist.

4.      The following day, June 16, 2026, the DEA moved for interlocutory appeal of the ALJ's order excluding its expert, under 24 C.F.R. § 1316.62, which permits interlocutory appeals of an ALJ's ruling to the DEA Administrator only where such an appeal is "clearly necessary to prevent exceptional delay, expense or prejudice to any party, or substantial detriment to the public interest." *Id.* Over MDS' objection, the ALJ granted the DEA's motion for interlocutory appeal and stayed the case.

5.      On June 28, 2026, the DEA Administrator issued an Order reversing the ALJ's decision and finding—with almost no analysis whatsoever—that Dr. Gainor was, in fact, qualified to testify as an expert.

6.      On July 1, 2026, another DEA ALJ, Beatriz Gonzalez, issued an Order reassigning the case to herself and scheduling a status conference. That Order states that the reassignment is

necessary "[d]ue to the previous ALJ's assignment ending with the U.S. Office of Administrative Law Judges (OALJ)."

7. This deprivation of Due Process has had devastating consequences on MDS, a small, family-owned retail pharmacy. Since the issuance of the ISO, MDS has already lost approximately 40% of its revenue. With no end in sight, MDS had no other reasonable option but to bring this lawsuit to seek relief from this Court.

8. MDS brings three constitutional challenges to the DEA administrative appeal process. First, the DEA's adjudicatory structure deprives MDS of due process under the Fifth Amendment, both because it denies MDS a neutral and detached decisionmaker and because it has denied MDS any prompt opportunity to be heard following its summary suspension. Second, the DEA's effort to impose punitive sanctions through agency adjudication, rather than before a jury, violates the Seventh Amendment. Third, the removal protections insulating DEA ALJ's from presidential control violate Article II of the Constitution.

9. Under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), this Court has jurisdiction to resolve these structural constitutional challenges now, notwithstanding the pendency of the agency proceeding, and the Controlled Substances Act (CSA) independently authorizes this Court to dissolve the ISO. 21 U.S.C. § 824(d)(1). MDS seeks declaratory and injunctive relief.

## THE PARTIES

10. Plaintiff MDS, Inc. is a privately-owned retail pharmacy organized under the laws of Georgia, with its principal place of business at 1100 Burleyson Road, Dalton, Georgia 30720. Until issuance of the ISO, MDS held a DEA Certificate of Registration authorizing it to dispense controlled substances.

4

11.    Defendant Todd Blanche is the Acting Attorney General of the United States and is sued in his official capacity. Under 21 U.S.C. § 824(d), the Attorney General is authorized to suspend a registration "simultaneously with the institution of proceedings" where she "finds that there is an imminent danger to the public health or safety." The Attorney General has delegated that authority to the DEA Administrator. *See* 28 C.F.R. § 0.100.

12.    Defendant United States Department of Justice is an executive department of the United States. *See* 5 U.S.C. § 101; 28 U.S.C. § 503.

13.    Defendant Terrance C. Cole is the Administrator of the DEA and is sued in his official capacity. The Attorney General's authority under 21 U.S.C. § 824 has been delegated to the Administrator. *See* 28 C.F.R. § 0.100. The Administrator presides over interlocutory and final administrative review in DEA registration proceedings.

14.    Defendant Drug Enforcement Administration is a component of the Department of Justice. *See* Exec. Order No. 11,727, 38 Fed. Reg. 18,357 (July 10, 1973).

**JURISDICTION AND VENUE**

15.    This action arises under the Constitution of the United States, the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

16.    This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

17.    This Court has independent jurisdiction to review and dissolve the Immediate Suspension Order under 21 U.S.C. § 824(d)(1).

18.    Although 21 U.S.C. § 877 channels review of *final* DEA orders to the courts of appeals, that provision does not displace this Court's jurisdiction over MDS' structural

constitutional claims. Under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), such claims fall outside a statutory review scheme because they are wholly collateral to the agency's enforcement action, lie outside the agency's expertise, and could not be meaningfully remedied through eventual court-of-appeals review of a final order.

19.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1). This is a civil action against an agency of the United States and an officer of the United States acting in his official capacity. Multiple Defendants, including Acting AG Blanche and the Department of Justice are headquartered in this District.

## FACTUAL ALLEGATIONS

### A. The Statutory Framework

20.    A DEA Certificate of Registration is required to dispense controlled substances. To revoke a registration, the DEA ordinarily must provide the registrant with prior written notice and an opportunity for a hearing before an ALJ before the revocation takes effect. *See* 21 U.S.C. § 824(c).

21.    The sole exception permitting suspension without a prior hearing is where the DEA "finds that there is an imminent danger to the public health or safety." *Id.* § 824(d)(1). "Imminent danger" means that, "due to the failure of the registrant to maintain effective controls against diversion or otherwise comply with" its obligations, "there is a substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur in the absence of an immediate suspension." *Id.* § 824(d)(2).

22.    The Government "bears the initial burden of proving that registration is inconsistent with the public interest[.]" *Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 174 (D.C. Cir. 2005).

23.     A district court may dissolve an immediate suspension order. 21 U.S.C. § 824(d)(1).

**B. The Immediate Suspension of MDS**

24.     On October 27, 2025, the DEA issued and served on MDS an Order to Show Cause and Immediate Suspension of Registration (the "ISO") under 21 U.S.C. § 824(d), alleging that MDS's continued registration constitutes an "imminent danger to the public health or safety."

25.     The ISO took effect immediately upon service, without prior notice to MDS and without any opportunity for MDS to be heard. It immediately prohibited MDS from dispensing any controlled substance.

26.     The ISO's allegations rest on the contention that MDS filled a small percentage of prescriptions without resolving purported "red flags," including allegations concerning "drug cocktails," "high dosage and immediate-release opioids," and "doctor shopping." The matters the ISO characterizes as "red flags" were either not red flags or were identified and resolved by MDS before dispensing.

27.     According to the ISO, if a pharmacist does not resolve any red flags, and document such resolution, the pharmacist has violated its "corresponding responsibility" under federal law. 21 C.F.R. 1306.04(a). However, this legal standard has been expressly rejected by at least two federal Circuit Courts. *See generally Neumann's Pharmacy, L.L.C. v. Drug Enf't Admin.,* 167 F.4th 320 (5th Cir. 2026); *United States v. Iriele* 977 F.3d 1155 (11th Cir. 2020).

28.     The ISO does not allege any actual or even arguable patient harm. It invokes the general problem of prescription-drug abuse without articulating facts establishing a substantial likelihood of an immediate threat of death, serious bodily harm, or abuse attributable to MDS, as 21 U.S.C. § 824(d)(2) requires.

29.    As a direct result of the ISO, MDS has been unable to dispense controlled substances since October 27, 2025, causing ongoing and irreparable harm, including loss of patients, revenue, and goodwill, and the deprivation of its protected interest in its registration.

**C. Procedural Posture**

30.    On October 27, 2025, DEA Administrator Terrance Cole issued the ISO, preventing MDS from dispensing controlled substances immediately, without the opportunity to be heard.

31.    On November 12, 2025, MDS timely requested a hearing on the ISO and the accompanying Order to Show Cause. The matter was initially assigned to DEA ALJ John Henderson Jr.

32.    The ALJ hearing on this matter took place on June 15 and June 16, 2026. On June 15—the first day of the hearing—ALJ Henderson granted MDS' motion to exclude the testimony of the DEA's proposed pharmacy expert, Dr. Carl Gainor, finding that "Dr. Gainor has no prior practice in the state of Georgia in dispensing medication, no academic expertise in the state of Georgia . . . has not taught pharmacy or pharmacy law, or in any manner the practice of pharmacy yin the state of Georgia."

33.    The following day, June 16, 2026, the DEA stated that it could not move forward with its case in light of the Court's exclusion of its expert and requested interlocutory appeal to the DEA Administrator pursuant to 21 C.F.R. 1316.62, which permits such an appeal only where it is "clearly necessary to prevent exceptional delay, expense or prejudice to any party, or substantial detriment to the public interest." *Id.*

34.    ALJ Henderson granted the DEA's request for an interlocutory appeal on June 16 and entered an order staying the hearing that same day.

35.    On June 28, 2026, the DEA Administrator issued an Order reversing the ALJ's decision and finding—with almost no analysis whatsoever—that Dr. Gainor was, in fact, qualified to testify as an expert.

36.    On July 1, 2026, another DEA ALJ, Beatriz Gonzalez, issued an Order reassigning the case to herself and scheduling a status conference. That Order states that the reassignment is necessary "[d]ue to the previous ALJ's assignment ending with the U.S. Office of Administrative Law Judges (OALJ)."

**COUNT I**
**Violation of the Fifth Amendment's Due Process Clause**

37.    MDS incorporates by reference the preceding paragraphs as if fully set forth herein.

38.    MDS has a constitutionally protected property interest in its DEA registration. *Adya LLC v. U.S. Drug Enforcement Admin.*, 826 F. Supp. 3d 115, 131 (D.D.C. 2026). The Due Process Clause therefore guarantees MDS notice and a meaningful opportunity to be heard before a neutral decisionmaker. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

39.    Due process requires "a neutral and detached" adjudicator. *Withrow v. Larkin*, 421 U.S. 35 (1975); *Tumey v. Ohio*, 273 U.S. 510 (1927). A person who has served in a prosecutorial or investigative role in a matter may not also sit in judgment of it, and structural arrangements that create an unconstitutional risk of bias are forbidden. *Williams v. Pennsylvania*, 579 U.S. 1 (2016); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Gibson v. Berryhill*, 411 U.S. 564 (1973).

40.    The DEA's adjudicatory structure deprives MDS of a neutral decisionmaker. The DEA both prosecutes the charges against MDS and, through its Administrator, decides interlocutory appeals and issues the final order. When the ALJ ruled in MDS's favor by excluding the Government's expert, the prosecuting agency obtained review of that ruling before its own

9

head (the same person who signed the ISO). That arrangement vests final adjudicative authority in the chief officer of the prosecuting party and creates an unconstitutional risk of bias.

41.     Independently, an immediate, pre-hearing suspension comports with due process only if the deprived party receives a *prompt* post-deprivation opportunity to be heard. *FDIC v. Mallen*, 486 U.S. 230 (1988); *Barry v. Barchi*, 443 U.S. 55 (1979). The promptness of the post-deprivation hearing is essential to the constitutional validity of any summary suspension.

42.     MDS has been deprived of that prompt hearing. Now more than eight months after the ISO took effect, MDS still has not been given the opportunity for a full hearing.

43.     By reason of the foregoing, the DEA's process, as applied to MDS, violates the Fifth Amendment, entitling MDS to declaratory and other relief.

**COUNT II**
**Violation of the Seventh Amendment**

44.     MDS incorporates by reference the preceding paragraphs as if fully set forth herein.

45.     The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII.

46.     In *SEC v. Jarkesy*, 603 U.S. 109 (2024), the Supreme Court held that the Seventh Amendment attaches to a statutory claim that is "legal in nature," and that the nature of the remedy is the more important consideration; a remedy designed to "punish or deter" the wrongdoer, rather than to restore the status quo, is legal in nature and triggers the jury-trial right. The Court further held that the public-rights doctrine did not permit the agency to adjudicate such a claim without a jury where the claim was akin to a traditional action at common law. *See also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989); *Tull v. United States*, 481 U.S. 412 (1987).

47.     The sanction the DEA seeks against MDS—revocation of its registration premised on alleged dispensing misconduct—is designed to punish and deter, not to compensate or to restore

any status quo. The DEA's underlying allegations sound in analogues to traditional common-law claims. Accordingly, the matter is legal in nature, and MDS is entitled to have the Government's claims tried to a jury rather than resolved through agency adjudication.

48. By proceeding to adjudicate these claims administratively, without a jury, the DEA violates MDS's Seventh Amendment rights.

**COUNT III**
**Violation of Article II of the United States Constitution; Separation of Powers**

49. MDS incorporates by reference the preceding paragraphs as if fully set forth herein.

50. DEA ALJ's are "Officers of the United States" because they occupy a continuing position established by law and exercise significant authority pursuant to the laws of the United States. *Lucia v. SEC*, 585 U.S. 237 (2018).

51. Article II vests the executive power in the President and requires that the President be able to supervise and, where necessary, remove the officers who exercise that power on his behalf. *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020); *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010); *Myers v. United States*, 272 U.S. 52 (1926).

52. DEA ALJ's are protected by two layers of for-cause removal restrictions. An ALJ may be removed only for "good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing." 5 U.S.C. § 7521(a). The members of the MSPB, in turn, may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

53. In *Free Enterprise Fund*, the Supreme Court held that two layers of for-cause protection—shielding an officer from removal except for good cause and withdrawing from the President the decision whether such cause exists—violate Article II. 561 U.S. at 492, 495–96. The same dual-layer protection insulates DEA ALJ's from presidential control.

54.    The Department of Justice has agreed with this and concluded that the multiple layers of removal protection in 5 U.S.C. §§ 1202(d) and 7521(a) are unconstitutional and has stated that it will no longer defend them. *See MMJ Biopharma v. Bondi*, 1:24-cv-127, Doc. 22 (D.R.I, Feb. 27, 2025).

55.    Because MDS is presently being subjected to a proceeding presided over by an officer unconstitutionally insulated from presidential control, MDS suffers a present, cognizable injury. *Axon*, 598 U.S. 175. MDS is entitled to a declaration that the removal restrictions are unconstitutional and to an injunction against the continued proceeding.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff MDS, Inc. demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MDS, Inc. respectfully requests that this Court:

a.    Declare that the DEA's administrative adjudicatory process, as structured and as applied to MDS, violates the Due Process Clause of the Fifth Amendment;

b.    Declare that the DEA's adjudication of the claims against MDS without a jury violates the Seventh Amendment;

c.    Declare that the statutory removal protections insulating DEA ALJ's from presidential control, 5 U.S.C. §§ 7521(a) and 1202(d), violate Article II of the Constitution;

d.    Enjoin Defendants from continuing, and from compelling MDS to participate in, the administrative proceeding before the DEA ALJ and Administrator;

e.    Declare the Immediate Suspension Order unlawful, and vacate and dissolve it under 21 U.S.C. § 824(d)(1), restoring MDS's registration pending any lawful proceeding;

12

f.  Award MDS its costs and reasonable attorneys' fees under the Equal Access to Justice

Act, 28 U.S.C. § 2412, and any other applicable authority; and

g.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of July, 2026.

/s/ Sanjay S. Karnik
Sanjay S. Karnik
DC Bar No. 998684
skarnik@gwbfirm.com
Scott R. Grubman*
GA Bar No. 317011
sgrubman@gwbfirm.com
* pro hac vice motion forthcoming
GRUBMAN WARNER BERRY
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

Counsel for Plaintiff

13